24-1497. Okay, Councilor Portbellin, if you'd proceed, please. Thank you, Your Honors. May it please the Court and my Honorable Opponent, I'm Blaine Myrie, Counsel for Defendant Appellant Jonathan Arvay. The core issue in this appeal is the one I'd like to address, and that's whether the District Court's jury instruction on the illegal gambling offense and knowingly instruction related to that were legal error inconsistent with this Court's decision in O'Brien such that it was instructional error that requires reversal of that conviction. Now, in this Court's O'Brien case, the Court said that the illegal gambling offense is not a specific offense, and that the gambling business violated the state law. But the Court in O'Brien said that to establish the required mens rea, the government must demonstrate that a defendant knew that his or her act was one of participating in gambling. And at the jury instruction conference, this was an issue of dispute between the Court and Defense Council. First, and I want to address this because the government has raised some preservation arguments. During the conference, Arvay's counsel said the following with regard to the elements instruction. My preference would be to have one instruction that has the 18 U.S.C. 1955 and the language from O'Brien that is included in there as the modification. Now, if you look at the defense proposed jury instruction, it includes in the elements instruction that language from O'Brien that I quoted, that the government must demonstrate that a defendant knew that his or her act was one of participation in gambling. The Court's element instruction did not include that. Instead, what the Court did, and this comes up later in the jury instruction conference, discussing the knowingly component. And what the instruction was that the Court gave, and this is page 445 of volume one of the record, it modified the last sentence of knowingly to assert that knowledge can be inferred if the defendant was aware of a high probability of the existence of his participation in a business that had the features making it a gambling business, unless the defendant did not actually believe he was participating in a business that had those features. Now, the Court indicated that, and this is at page 929 of volume eight, the Court indicated that with this modification, it believed that this instruction tracked O'Brien. Defense counsel at that point interjected and said, we disagree that it tracks O'Brien. We think O'Brien requires the exact words of O'Brien, the exact words that were included in defense counsel's proposed instruction. And on your preservation point, Mr. Meyrie, where exactly did the defense counsel make that last statement? Because when I looked at what the dispute was below, defense counsel wanted the instruction actually to track the pattern instruction of the Tenth Circuit, and he wanted, therefore, and that is not what we're talking about now. We're talking about some sort of close adherence to the language of O'Brien. That strikes me as a different thing than what was at issue before the district court. And so where was this language about, I want you to track the specific language of O'Brien, what page are you referring to for that? I'm referring to page 929, where Mr. Bornstein says, we think O'Brien requires the exact words of O'Brien. In my view, that is specific enough to preserve the record, particular, to preserve the issue, particularly where defense counsel had earlier said, we believe the instruction needs, the elements instruction needs to have the 1955 language and the O'Brien modification, and that's at page 906 of volume 8. Go ahead. I didn't mean to talk over you. Okay, that's okay. And I think what is clear is the court, the defense counsel raised that it wanted the language from O'Brien in the elements instruction, and that it objected to the modification and the knowingly instruction that didn't use the language from O'Brien. And by language, are you talking about the word participation? Well, I'm talking the exact wording from their instruction, which was the defendant, the government must demonstrate that a defendant knew that his or her act was one of participation in gambling. That's the mens rea requirement from O'Brien. And the government suggests that that is just shorthand for what the statutory terms are, and the statutory terms don't use participation. They list a number of items that would constitute gambling. I mean, they provide a basis for the mens rea. But Your Honor, when they're saying we want the exact language from O'Brien, what O'Brien says, and this is a verbatim quote, to establish the required mens rea, the government must demonstrate that a defendant knew that his or her act was one of participation in gambling. And then the question becomes, what does participation mean? And the statute tells us what participation means. And so if the instruction has the statutory language that equals participation, then what difference does it make? Indeed, if all you had was the word participation, why wouldn't that have been not guided the jury as to what was actually necessary, what knowledge had to run towards or relate to? Well, I think the difference, Your Honor, is between participation in gambling and participating in a business that has the features of a gambling business. And I think it boils down to a question of proof, really, and what the government had to prove. In this case, the government had to, based on the court's instructions, and this is where we think O'Brien, the court erred with regard to O'Brien, is on these instructions, particularly the knowingly instruction, the jury could convict Arve simply because he owned player one. In other words, he knowingly participated in a business. And I would turn the court's attention to... Mr. Meyer, I hate to interrupt your train of thought, but I want to follow up on what you just said in the context of the preservation issue that the chief is asking about. And let me ask it in this way. The question, I think you're making a very eloquent point that on 906 and on 929, counsel was specifically saying, this is what I want. I want you to use the language in O'Brien. From the standpoint of Judge Gallagher, and if we were to appoint you as a judge, isn't it the logical nub of a preservation issue is why? Every defense lawyer wants their proposed language used. Every prosecutor wants their language used. For Judge Gallagher, or if I were to appoint you as Judge Meyer, the question is why? And you make a very good argument just now. Well, the actual instruction only required proof that Mr. Arve knowingly owned player one, and that player one involved features of gambling. But it never showed that he knew that he was only investing, controlling an act of gambling. The problem is on 906 and 929, there's nothing to alert Judge Gallagher to not just the language, but the thesis that you're presenting to us. And that's my hesitation on preservation. But if you can talk me out of that, I just want to share with you what my trepidation is on preservation. Yeah, and I appreciate that, Your Honor. And I don't claim to be as smart or eloquent as Judge Gallagher, who I have eminent respect for. But I think if you look at page 930 of the record, and I think this is where Mr. Bornstein sort of drills down on it, and this is volume eight, where following the court's comment, my record is that we object. The way this instruction has written, because it makes it not a mens rea of general intent, but makes it a strict liability crime. Now, I think what he really means by that, and if you look at the last couple sentences there, he says the way the court is proposing to do this is to make it a strict liability crime, because if you own a business, then you cannot but have the knowledge that the court is inferring, and therefore there is no mens rea. If you own the business, you have the mens rea. And I think that's the point that I'm making, is it's clear on the record that Areve knowingly owned Player One. No question about that. And our contention is that under the instruction, that was enough to satisfy the mens rea requirement on the instructions as given by Judge Gallagher. But that's not sufficient to satisfy what O'Brien requires, which is that Areve's knowledge be that he was engaged in acts that constitute participating in gambling. And I know it seems somewhat convoluted and somewhat nuanced, and I know I struggled with it, but I think there is a real difference that mattered in this case, particularly where you look at the evidence showing a lack of knowledge on Areve's part. And I would refer the court to the Supplemental Record Exhibit 1D, which is the body cam video, five and a half minute excerpt that was recorded by the undercover officer. Can I interrupt just for a second before we get to that point? Why doesn't the paragraph that comes after the three elements in instruction number 15 assist the jury if they really have some question about whether he needed to know he was managing, supervising, directing, or owning all or part of a gambling business? Why doesn't that paragraph which says a person conducts a gambling business if he participates in the operation of the gambling business in some function necessary to the operation of the gambling business? And then it explains the law, which is a mere better customer isn't involved in the conduct of the business. That should have, if they had any question about it, shouldn't that have clarified to them that participation is required in the operation of the gambling business? Isn't that pretty simple and straightforward for the jury? It's not just participation. It's not just management. It's not just ownership. It's participation in the gambling business. But Your Honor, on the instructions as given, knowingly owning the business would have been sufficient because that is participating in the business. I'm asking, does this clarify if you really think that they're confused or that's somehow ambiguous? Doesn't this paragraph kind of clarify what? No, I don't think. Sorry, but participation encompasses all of those terms that were used in the first element. Clearly, that's all about participation and that's what you're talking about here. And that first paragraph explains that you've got to participate in the operation of a gambling business. Participation in the operation of a gambling business. If the jury was confused by that first paragraph, why didn't that help them out is what I'm saying. Well, I would point out, Your Honor, that that paragraph is also included in, and I think it comes from the pattern of Tenth Circuit instruction, but it's also included in the defendant's proposed instruction. And I think the problem is that it doesn't have the distinguishing factor between participation in a business that has the features of a gambling business versus participating in acts that constitute gambling, which is really what O'Brien says. I think it's a subtle distinction, but I think it's a distinction that has a difference. And in this case, it was reversible error to not include the O'Brien language. And I'd like to reserve the last minute for rebuttal, if I may. Yes. Well, they're from the government. May I please the court? Elizabeth Ford Malani on behalf of the United States. The jury instructions here comported with 18 U.S.C. 1955 and this court's decision in United States versus O'Brien. Now, as an initial matter, for the reasons we set out in the answer brief, we believe this issue is unpreserved. And I'd like to make a few observations with regard to the record sites in the reply brief. So starting on volume eight, page 905, I think the fairest reading of the record was not that the defense was asking for additional language. This was in the context of asking that the elemental instruction be split into two different instructions. And so the defense is saying we would like the federal law in one instruction and basically the state elements in another instruction. And so is that is that the is the volume eight, page 905, the statements of Martha Eskison at the instruction conference? Yes. 905 and 906. I don't I think her statements were broader than that. She asked the district court. You're right to split the court's proposed instructions into two. And then she said with one instruction, combining the elements of section 1990, 1955. And then I think she made a really important statement right there. This is along with language from O'Brien included in there. And by that, it appears she's referring to the instruction that they submitted that the court had rejected. So I disagree, your honor, that that's I mean, if she was referring to that, if she is referring to that in there. She said as a modification, meaning she's asking the court to modify the section 1955 instruction by pulling it away from the the state law and by including language from O'Brien included in there, if she's saying in there as meaning the the instruction she's referred to that was submitted, they have the exact language that they're asking for in that instruction, which the court rejected. And she seems to be repeating her request for it here. Why isn't that enough? I disagree, your honor, because remember that the instruction as given to the jury, the final instruction on page 441 of volume one, it already did have language from O'Brien. And it's just as possible that that's the language that counsel was referring to. She if she's referring to in there, she wants the language from O'Brien included in there. She may be saying the language from O'Brien that she included specifically, which they've now repeated. I mean, isn't it ambiguous enough that we could give them the at least having made this along with the comments that Borenson made about objecting to mens rea, strict liability versus general tent. The court understood where they were going. I mean, and what they had proposed specifically, which was this very specific language that they have proposed in their instruction. So, your honor, I guess I disagree to the extent that there's any ambiguity in the record. And I do agree that maybe she was referring to that language from O'Brien, but it's just as possible that Miss Eskison was referring to the language that was already in there. And to the extent that there is ambiguity, I think the fact that the court never said, counsel, I hear your argument about you want that extra line from O'Brien, and this is why I'm excluding it. That never happened. And it didn't talk about any of the language. She specifically referred to O'Brien, whether she was referring to this language that they had already suggested or some other language. She was referring to O'Brien and the court never specifically dealt with that language. So, I'm not sure how we can, you know. I think the absence of a record on that point is particularly telling. I also think that the discussion on 929 and 930, that was about a wholly separate instruction. That conversation was about the knowingly instruction. And the government agrees that that objection, that issue on appeal is preserved because that was the context in which that argument was made. And that's the mens rea, strict liability versus general intent. Right. That entire conversation was prefaced with the court said, okay, knowingly, who disputes this basically. But regardless, I'd like to turn to O'Brien because that case is really at the heart of this appeal. So, this court made plain there that 1955 is a general intent crime. The defendant does not have to know that the gambling business violated state law in order to be guilty of the crime. He only needs to knowingly commit an act that's made unlawful by statute. And the act made unlawful by statute per the statutory text is participation in an illegal gambling business. And yes, that participation is a shorthand for those verbs in the statute. And we know that from the footnotes of the Supreme Court case, Santa Bria. So, the rub of this case is O'Brien's subsequent passage that the government must demonstrate the defendant knew that his or her act was one of participation in gambling. I read Mr. Arve's arguments to mean that something more than general intent is required by the statement. Otherwise, the instructions assertion in the first element that the defendant and four more persons knowingly, verbs, verbs, verbs, all or part of a gambling business would be sufficient. But to read that language of O'Brien to mean that there's something more than general intent required, that's at odds with the other language of O'Brien and would render that case internally inconsistent. Because again, O'Brien makes clear 1955 is a general intent crime. So, I think that this court should instead... Well, your argument suggests that they are seeking something more than they being the defendant and seeking something more than general intent. What do you construe them to be seeking? I mean, what level of mens rea do you construe them to be seeking? I think it sounds to me that this is asking for some sort of general intent plus getting toward a willfully or specific... Meaning what? Would that they would, I mean, to be more concrete, what do you, what do you understand them to think to be saying needs to be shown in terms of intent? So, I don't want to speak for opposing counsel, but I think... Well, I'm trying to understand their arguments. I want to understand, play off of what you understand them to be made. So, I think it means that there has to be knowledge that the business was violative of state law. It satisfied gambling under state law because that's what knowingly referred to. I didn't understand Mr. Myrie, as far as I know, didn't even mention state law when he was talking about mens rea. So, I mean, I don't think, I mean, that's a whole separate issue, is it not? I mean, the idea that you have to know you're violating state law, that would be a willfully, to your point, mens rea, but I don't think, I didn't understand that to be what he was saying. I thought he was saying that, and this is where I want you to react to. I understood him to be saying that as the text of the statute is currently constructed, you would just have to know, you wouldn't have to know that your acts, you wouldn't have to know that your acts were participation in a gambling business. You would just have to know that you had a business that had features of gambling. I think that that's correct, and that was conveyed in the knowingly instruction, and I think that also the first element... And is that statement enough, then, under O'Brien, that you know that you're engaged in a business that has features of gambling? That adds up to gambling under state law, right? Well, that's enough. I think that is enough. I think that that's what O'Brien tells us, and I think that the reason that O'Brien tells us that, first of all, it's supported by the sufficiency analysis that's in O'Brien. The dispute there wasn't whether or not gambling was occurring at the business. It was, what did the defendant know about those actions? Not what they knew about state law. That wasn't discussed. It was what they knew about the specificity of the types of transactions that were going on at that business. Ms. Pavley, I'm sorry to interrupt you. Don't lose your train of thought, but can I ask you a question about your understanding of how this instruction intersects with O'Brien? Are you saying that O'Brien would uphold a conviction if the undisputed evidence say that Bob Bacarach owns the Bob Bacarach Warehouse? I know it. I specifically purchased the stock for it. Unbeknownst to me, the Bob Bacarach Warehouse is a community where there's nothing but blackjack tables. I've never set foot in this place, and I don't know whether state law characterizes it as gambling. No human being would do anything but consider it as gambling. Would that suffice under O'Brien? I assume not. I assume that that, and as I understand it, that's what Mr. Meyer's argument is, is that the instruction would allow a conviction under that scenario. No, I agree that that's not permissive. That would not be sufficient evidence under the statute if the defendant did not know the activities that were conducted at the business that they owned. But, and I think that the jury, or that the jury instructions really cautioned against a conviction in that regard. I think the paragraph that Judge Moritz pointed to, as well as the first element of the crime, which says the defendant and former persons must knowingly conduct, verb, verb, verb, a gambling business. So that knowingly applies to the gambling business. They don't have to know that it's a gambling business under state law, but on the flip side of that instruction, there is a definition of what is a gambling business. Well, let me play devil's advocate on that, Ms. Malani. So under, under my scenario in instruction 15, it, I suppose it depends on a grammatical dissection of the sentence. If I, under my scenario, I did knowingly own all or part of a gambling business. You know, it's the modifier gambling that modifies business. And so I know, I knowingly owned all of that business. It had the features of gambling. I just didn't know that it had the features of gambling. And that seems to be, you know, arguably consistent with the conviction if the jury were to strictly follow jury instruction number 15. I suppose it depends on whether or not the knowingly, the knowing clause modifies gambling or just modifies business. So I don't think that there's been any argument in this case about that knowingly didn't apply to the gambling business. And I think that the fair reading of the instruction is that it did. And lest there be any confusion, again, jury, this court's authority has said that jury instructions don't need to be perfect. They just have to give the jury the ideas that they need to resolve, the issues they need to resolve and not mislead them. And I think that if there was any reason to be doubtful about whether or not the jury knew its duty here, the knowingly definition, which talked about in when knowledge can be inferred, I think that that clarified any dispute about what exactly the defendant need to know in this case. I think that another reason, because there wasn't really a dispute here that the defendant didn't know what was going on at the business. I think that that is one of the reasons why any instructional error, if there even was one, if this issue is even preserved, I think that any imprecision in the language really is harmless because the defendant's theory wasn't that he didn't know what was going on and nor was the theory that he couldn't somehow be owning or something of this player one arcade. It was pretty undisputed that he was very, very involved in this case or in this arcade. And so I think that's another one of the reasons why this court can affirm. I did want to touch on to the extent that there is any question about the definition of gambling. I read the reply brief to sort of concede that issue that the jury was correctly instructed on the meaning of gambling as it pertained to this case in the proper Colorado framework. And I also think that for the reasons that we've been having all this discussion about what exactly that second passage in O'Brien meant, it could have misled the jury. So I don't think it was an abuse of discretion for the court to say this language on its own without this larger context of that basically the discussion that we're having right now would have just confused the jury. So I think that this was wholly within the district court's authority to exclude this language, not to risk confusion. And I think that the jury was properly instructed in this regard. Did they entirely concede on the gambling instruction? I mean they spoke in the reply brief there was a reference to the fact that we understand that game of skill does not apply in the context of simulated gambling. But then there was some somewhat cryptic reference to the idea that perhaps game of skill by virtue of the pattern instruction language would still suggest the game of skill. I mean by virtue of the pattern instruction there would be a suggestion that game of skill could still apply in this context. So I'm not sure there was an entire concession on that. Right and so how I read that language in the footnote of the reply brief was that under the definition of gambling as the jury was instructed in this case there are a couple different ways that that definition can be satisfied. It's risking money based on lot, that's one way. Chance, that's another way. The operation of a gambling device, that's a third way. Or the happening or outcome of an event including a sports event over which the person has no control. So I suppose that the jury was instructed in that regard that they could find that that's what gambling under that theory if that's what they found. That gambling could be satisfied with that definition but that's not the only definition that was applicable here. If there are no further questions I think the jury was correctly instructed to the extent that this court reaches the question at all and any error was harmless regardless and we'd ask for this court to affirm. Okay thank you. Mr. Myrie, what did you mean by footnote three in the reply brief? I mean what what is are you conceding on the gambling instruction or what are you saying there? Your honor, we're conceding on the gambling instruction that it was based that the exception for games of skill is not in the 1810.5 version. That's clear and the government is trying to make sure that that's not the case. Correct on that point. What I'm not conceding is that a game of skill is gambling or that a game something that is a game of skill is necessarily gambling. There was some notion in the record that these were games of these couldn't be games of skill. The government didn't bring in an expert to testify these were merely games of chance and I see my time has expired. Now and I want to follow up. So you're saying that there was no statutory exemption but it's still the case that okay that that game a game of skill would not be gambling. A game of skill could have found that a game of skill was not gambling for purposes of this statute. Correct based on the the patterned Colorado jury instructions. But you don't have an extinct but you're withdrawing your separate challenge to the instruction. Correct that is correct your honor yes yes I know it's quite confusing this. Okay any other questions for Mr. Myrie? No. All right thank you counsel case is submitted. Okay thank you your honors. Thank you.